UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM PUTNAM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CENTERRA GROUP, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 25-1272 (JEB) |

## MEMORANDUM OPINION

A security job is not the same as job security. Plaintiffs Nathan Matthews and Matthew LaRock found that out last year. The two men previously worked as guards for Defendant Centerra Group, LLC, where they were contracted out to positions at the Department of Energy. In 2024, both took family and medical leave. When Matthews and LaRock returned to work, however, they discovered that their security clearances — required for their DOE positions — had been revoked and their jobs terminated. Two coworkers and union officers, Plaintiffs Adam Putnam and Mary Philippe, helped grieve their terminations but ended up losing their own security clearances and DOE positions in the process. The four fired employees then brought this lawsuit against Centerra, Secretary of Energy Chris Wright, and two supervisors at DOE — William Riddle and Kurt Runge — alleging violations of the Family and Medical Leave Act and the D.C. Family and Medical Leave Act. Both Government Defendants and Centerra have now filed Motions to Dismiss. The Court will grant the Government's Motion in part and deny it in part and will deny Centerra's Motion in full.

1

I.      **Background**

As is required at this juncture, the Court treats the Complaint's factual allegations as true for the purpose of evaluating Defendants' Motions. Centerra provides security services to various federal agencies, including DOE. See ECF No. 20 (Am. Compl.), ¶ 8. At the start of 2024, Matthews, LaRock, Philippe, and Putnam were all working as Security Police Officers on Centerra's DOE contract, and DOE and Centerra served as their joint employers. Id., ¶¶ 4–7. In addition, Matthews and LaRock were members of the security-guard union that bargained with Centerra, while Putnam and Philippe served as Union President and Treasurer, respectively. Id., ¶¶ 12, 15–16.

In August 2024, LaRock and Matthews requested time off under the FMLA and DCFMLA — LaRock for the impending birth of his child and Matthews for recovery from elbow surgery. Id., ¶¶ 13–14. Their requests for leave were approved with little fuss. Id. Yet, when the two tried to return to work in December, they were informed that their security clearances had been revoked by Riddle, DOE's Facility Security Manager, and Runge, DOE's Director of Headquarters Security Operations, rendering them ineligible to continue working at the agency. Id., ¶¶ 10–11, 13–14, 17. They were then fired. Id., ¶¶ 13–14. Putnam and Philippe, acting as Union officers, opposed their terminations and filed grievances on Matthews and LaRock's behalf. Id., ¶¶ 15–16. What began as a tale of two terminations then took a turn for the worse: shortly after filing the grievances, Putnam and Philippe lost their security clearances and their jobs as well. Id., ¶¶ 19–20.

The Union, acting on Matthews, LaRock, and Putnam's behalf, sued to compel arbitration of several issues related to their terminations. Int'l Guards Union of Am. Loc. 150 v. Centerra Grp., LLC, No. 25-583 (D.D.C. 2025). The Court, which is also presiding over that

2

matter, has since sent a subset of those issues to arbitration. Int'l Guards, No. 25-583, ECF No. 22 (Mem. Op.) (D.D.C. Feb. 10, 2026). In addition, the four former employees filed this lawsuit against Centerra, Secretary Wright, Riddle, and Runge, alleging a constellation of FMLA/DCFMLA violations and seeking declaratory, injunctive, and monetary relief. See Am. Compl., ¶¶ 35–163. The counts break down into two main categories: Matthews and LaRock bring claims against Defendants for interfering with their right to take family and medical leave, and Putnam and Philippe assert claims against Defendants for retaliating after they engaged in protected activity (opposing purportedly unlawful actions against another employee). Centerra and the Government Defendants have now separately moved to dismiss. See ECF Nos. 22 (Centerra MTD); 23 (Gov. MTD). Plaintiffs oppose both Motions in separate Oppositions. See ECF Nos. 24 (Pl. Opp. to Centerra); 26 (Pl. Opp. to Gov.).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim for relief when it "lack[s] . . . subject-matter jurisdiction." In evaluating a Rule 12(b)(1) motion, courts are instructed to "treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." Han v. Lynch, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted). Because federal courts are courts of limited jurisdiction, a plaintiff who seeks to invoke the court's powers bears the burden of proving that it has subject-matter jurisdiction to hear his claims. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Sovereign immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), so claims barred by the Government's sovereign immunity are "subject to dismissal under Rule 12(b)(1)." Clayton v. District of Columbia, 931 F. Supp. 2d 192, 200 (D.D.C. 2013).

Under Federal Rule of Civil Procedure 12(b)(6), conversely, a court must dismiss an action when the complaint "fail[s] to state a claim upon which relief can be granted." As with a 12(b)(1) motion, a court assessing a 12(b)(6) motion must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Courts reviewing Rule 12(b)(6) motions are limited to the pleadings and "may only consider the facts alleged in the complaint, any documents attached as exhibits thereto, and matters subject to judicial notice." Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7, 14 (D.D.C. 2008).

**III.    Analysis**

Government Defendants put forth three arguments in support of their Motion to Dismiss: Plaintiffs' DCFMLA claims should be dismissed for lack of subject-matter jurisdiction, their FMLA claims should be dismissed for the same reason, and even if there is jurisdiction, the Supreme Court's decision in Department of the Navy v. Egan, 484 U.S. 518 (1988), precludes any claim for relief. See Gov. MTD at 1–2. Centerra's Motion advances just the Egan argument, contending that the judicial deference afforded to executive security-clearance

decisions means that Plaintiffs have failed to state any claims against the Company. See Centerra MTD at 2–3. The Court will consider each argument in turn.

### A. DCFMLA Claims

As to the DCFMLA counts, the Government contends that the Court lacks subject-matter jurisdiction because that Act did not abrogate its sovereign immunity. See Gov. MTD at 7–10. Plaintiffs have since acquiesced to tossing these claims, see Pl. Opp. to Gov. at 16 n.1, so the Court will dismiss all DCFMLA counts against the Government Defendants.

### B. FMLA Claims

The Government next maintains that Plaintiffs have brought their FMLA claims against the wrong defendants and that the Court therefore lacks jurisdiction over the case. See Gov. MTD at 10–11. In the Complaint, Plaintiffs name Secretary Wright, Riddle, and Runge as Government Defendants, notably omitting DOE itself. See Am. Compl., ¶¶ 9–11. The parties dispute whether the claims against Riddle and Runge are in their official or personal capacities, but they appear generally aligned that those counts name Secretary Wright in his official capacity. See ECF No. 28 (Gov. Reply) at 4–5; Pl. Opp. to Gov. at 16.

Seizing on DOE's omission from the Complaint, the Government argues that the FMLA authorizes suit against only a "public agency," so individual officials cannot be sued at all, and all three Government Defendants must be dismissed from the case. See Gov. MTD at 10–11. This argument misunderstands the import of an official-capacity suit. It is well settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," so "long as the government entity receives notice and an opportunity to respond." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) (finding official-capacity suits "generally represent only another way of

5

pleading an action against an entity of which an officer is an agent"); Cnty. Bd. v. U.S. Dep't of Transp., 705 F. Supp. 2d 25, 28 (D.D.C. 2010) ("[A]n official-capacity suit is a way of pleading an action against the agency which the official heads."). The suit against Secretary Wright in his official capacity thus functions as a suit against DOE. Coulibaly v. Kerry, 130 F. Supp. 3d 140, 148–49 (D.D.C. 2015) (accepting FMLA suit against Secretary of State in official capacity as equivalent to suit against Government).

To the extent the Government protests that it lacked notice that this suit sought to hold DOE liable, the Court disagrees: the Attorney General was served when Secretary Wright was named as a Defendant, see ECF No. 9 (U.S. Att'y Gen. Serv.), and the Complaint makes numerous mentions of DOE's liability. See Am. Compl., ¶¶ 13–15 (describing "Defendant DOE" in various factual allegations), 25 (arguing that "DOE failed to follow its own rules and regulations"). For these reasons, the Court will permit the suit against Secretary Wright in his official capacity to proceed with the understanding that, as in all official-capacity suits, any judgment would be binding on DOE.

Plaintiffs' claims against Riddle and Runge pose a trickier set of issues. The Complaint never specifies whether the suit is brought against them in their official or individual capacities. The parties also fiercely debate whether the FMLA even authorizes suits against public officials in their individual capacity, a question of statutory interpretation that has split the appellate courts and that remains open in this Circuit. See Gov. MTD at 12–14; Pl. Opp. to Gov. at 18–27; Austin v. Washington Metro. Area Transit Auth., 2020 WL 2962609, at *13 (D.D.C. May 28, 2020) (summarizing circuit split on FMLA employer definition).

The Court need not reach the statutory question, however, because it finds that Plaintiffs' claims were brought against Riddle and Runge in their official capacities. Although Plaintiffs

6

argue the contrary in their Opposition, that assertion is not binding on this Court. Daskalea v. District of Columbia, 227 F.3d 433, 447–48 (D.C. Cir. 2000). Instead, when a complaint is silent as to whether a suit is brought against a party in his personal or official capacity, the D.C. Circuit employs a course-of-proceedings test to ask what the totality of circumstances suggests and what kind of potential liability a defendant would have been given fair notice of. Id. at 448.

Here, the evidence indicates an official-capacity suit. To start, nowhere in the Complaint do Plaintiffs specify that their claims are brought against the supervisors in their individual capacities. Other circuits treat such an omission as dispositive. Soper ex rel. Soper v. Hoben, 195 F.3d 845, 853 (6th Cir. 1999) ("Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities."). Delving further into the Complaint does little to aid Plaintiffs. In the prayer for relief, the employees requested a declaratory judgment on the unlawfulness of the Defendants' "employment policies, practices, procedures, conditions[,] and customs," and injunctions directing "Defendants to reinstate" Plaintiffs and their benefits — remedies that can be secured only from DOE, not Riddle and Runge personally. See Am. Compl. at 31–32. Plaintiffs point to their request for punitive damages as an indication that Riddle and Runge have been sued in their individual capacities, see Pl. Opp. to Gov. at 18, but the FMLA does not permit the awarding of punitive damages to begin with. See 29 U.S.C. § 2617(a)(1)(A); Shatteen v. Omni Hotels Mgmt. Corp., 113 F. Supp. 3d 176, 182 (D.D.C. 2015) ("Because the FMLA only affords relief for compensatory damages, punitive damages are unavailable irrespective of the forum."). For these reasons, the Court concludes that Plaintiffs sued the DOE supervisors in their official capacities.

Because suit against Riddle and Runge is redundant with suit against Wright — all three amount to a suit against DOE — the Court will dismiss all claims against those men for

7

efficiency purposes. Placide Ayissi-Etoh v. Fannie Mae, 49 F. Supp. 3d 9, 14 (D.D.C. 2014) (dismissing redundant official-capacity claims when government entity was already named as defendant). It will permit the counts against Secretary Wright in his official capacity — essentially claims against DOE — to proceed.

### C. Review of Security-Clearance Decisions Under Egan

Finally, both the Government and Centerra assert that the claims against them are barred by the Supreme Court's decision in Department of the Navy v. Egan. In Egan, a civilian Navy employee lost his security clearance and was consequently removed from his position at a nuclear-submarine maintenance facility. See 484 U.S. at 521–22. He appealed the clearance revocation to the Merit Systems Protection Board, which held that it had no authority to review "a security-clearance determination underlying a removal." Id. at 525. On appeal, the Supreme Court agreed and held that the merits of the security-clearance denial, "a sensitive and inherently discretionary judgment call, [are] committed by law to the appropriate agency of the Executive Branch." Id. at 527. For that reason, the MSPB could not review the revocation decision. In the years since, courts have interpreted Egan to stand for the proposition that security-clearance decisions cannot be subject to judicial review either. E.g., Lee v. Garland, 120 F.4th 880, 888 (D.C. Cir. 2024); Bennett v. Chertoff, 425 F.3d 999, 1001 (D.C. Cir. 2005); Dorfmont v. Brown, 913 F.2d 1399, 1401 (9th Cir. 1990); Makky v. Chertoff, 541 F.3d 205, 212 (3d Cir. 2008). While Egan's bar on judicial review may sound like a jurisdictional limitation, the D.C. Circuit has clarified that dismissals under Egan should be considered dismissals for failure to state a claim, not for want of jurisdiction. Oryszak v. Sullivan, 576 F.3d 522, 526 (D.C. Cir. 2009). The Court will accordingly evaluate Defendants' Motions under a Rule 12(b)(6) standard.

1. *Department of Energy*

Since the Court has now dismissed the claims against Riddle and Runge, it will consider the Government's contentions only as to DOE. The Government argues that under Egan, the Court cannot review the merits of its decisions to revoke Plaintiffs' security clearances. See Gov. MTD at 14–19. True — but Plaintiffs are not asking for such review. Instead, their Complaint asserts that DOE failed to follow its own regulations and procedures in ways that violated the FMLA, and that those procedural anomalies merit this Court's intervention. See Am. Compl., ¶¶ 21–34. For example, Plaintiffs allege that DOE regulations required the Government to obtain their signatures before terminating their employment, to initiate an administrative review process that would have allowed them to contest their clearance withdrawals, and to channel revocations through specified processes, all of which DOE bypassed to unlawfully fire them in contravention of the FMLA. See Pl. Opp. to Gov. at 29–31.

Appellate courts across the country have regularly interpreted Egan to permit review of whether an agency followed its own regulations and procedures, even when those regulations deal with security-clearance revocations. Stehney v. Perry, 101 F.3d 925, 932 (3d Cir. 1996) (finding jurisdiction to review whether agency followed own clearance-revocation procedures despite Egan); Jamil v. Sec'y, Dep't of Def., 910 F.2d 1203, 1208 (4th Cir. 1990) (same); Duane v. U.S. Dep't of Def., 275 F.3d 988, 993 (10th Cir. 2002) (same). After all, while whether to revoke a security clearance is a discretionary judgment call, whether to follow required procedures is not. And those procedures are separate from the merits of the revocation. Similarly, the D.C. Circuit — albeit in a decision prior to Egan — has held that agencies may be subject to suit for failing to follow their own regulations. Doe v. Casey, 796 F.2d 1508, 1519 (D.C. Cir. 1986), aff'd in part, rev'd in part sub nom. Webster v. Doe, 486 U.S. 592 (1988). The

fact that courts may not review clearance revocations is not intended to keep employees from vindicating "all other employment rights and benefits." Adams v. Dep't of Def., 688 F.3d 1330, 1334 (Fed. Cir. 2012). In line with that sensible rule and given that Plaintiffs are not asking for review of DOE's revocation decisions, the Court will permit Plaintiffs' FMLA counts against the Government to proceed.

### 2. *Centerra*

Centerra's Motion similarly argues that Egan bars all of Plaintiffs' DCFMLA and FMLA claims against it. See Centerra MTD at 8–10. Like the Government, the Company stretches Egan beyond its limits.

Egan carves out an area of executive discretion — security-clearance decisions — in which courts must defer. The case, however, does not insist that "all decisions that might bear upon an employee's eligibility to access classified information" are likewise unreviewable. Rattigan v. Holder, 689 F.3d 764, 767 (D.C. Cir. 2012). This is especially true for claims alleged "against private employers, because such defendants are rarely responsible for (or even substantially involved in) the government's security clearance decisions." Zeinali v. Raytheon Co., 636 F.3d 544, 550 (9th Cir. 2011).

Centerra's Motion attempts to recast the legal landscape, arguing that while courts have permitted some Title VII discrimination claims to proceed even when a security-clearance determination is involved, those cases represent special Title VII exceptions to Egan, and there is no existing exception for FMLA/DCFMLA claims. See Centerra MTD at 10–11. This argument misses the point: Egan's applicability does not depend on the statutory basis of a plaintiff's claim. It depends instead on what precise employer conduct a plaintiff asks a court to examine and whether that conduct is "severable" from the clearance determination. Sanchez v. U.S.

Dep't of Energy, 870 F.3d 1185, 1196 (10th Cir. 2017).  Here, the Court finds that it may evaluate Centerra's conduct without reviewing DOE's clearance-revocation decisions.

In their Complaint, Plaintiffs alleged that Centerra interfered with LaRock and Matthews's rights to take family and medical leave and that it retaliated against all four Plaintiffs for engaging in conduct protected by the FMLA and DCFMLA — either taking leave, as LaRock and Matthews did, or protesting the violation of another employee's FMLA rights, as Philippe and Putnam did.  See Am. Compl., ¶¶ 44–49, 71–77, 150–52.  While the Court may not review DOE's security-clearance revocations, it is certainly empowered to review Centerra's conduct leading up to and following the revocations to determine whether that conduct violated the statutes.

Starting with pre-revocation conduct, the D.C. Circuit has explained that Egan shields from judicial review the specific judgments to grant or deny security access made by those with "the necessary expertise in protecting classified information," but not any and all decisions leading up to a clearance revocation.  Rattigan, 689 F.3d at 767 (quoting Egan, 484 U.S. at 529).  For example, in Rattigan, an FBI employee was subject to a security-clearance investigation after a coworker reported concerns about his conduct and a supervisor forwarded those concerns to the security office.  Id. at 766.  The D.C. Circuit held that Egan did not bar review of the supervisor's decision to report security concerns, even if the report led to the security-clearance investigation and ultimate decision, which was unreviewable.  Id. at 767–68.  Likewise, here, if Centerra's actions and decisions caused Plaintiffs to lose their security clearances, that conduct is not shielded from judicial review under Egan because it is not the kind of discretionary decisionmaking by a security expert that Egan sought to protect.  The Court can therefore

11

consider Plaintiffs' claims of retaliation and interference without reviewing the merits of the clearance revocations.

In addition, the FMLA and DCFMLA impose a duty on employers to reinstate employees following their return from family and medical leave. See 29 U.S.C. § 2614(a)(1)(A); D.C. Code § 32-505(d)(1). Alternatively — say, for example, an employee's original position is no longer available — the employer is obligated to place him into "an equivalent position." 29 U.S.C. § 2614(a)(1)(B); see also D.C. Code § 32-505(d)(2). Plaintiffs allege that rather than doing this, Centerra simply fired them after their DOE positions were terminated. See Am. Compl, ¶¶ 13–14. Even if Plaintiffs could no longer work in their DOE positions following the revocations of their security clearances, those revocations have no bearing on whether Centerra was obligated to find Matthews and LaRock alternate positions and whether it satisfactorily did so.

In 2017, the Tenth Circuit addressed a Rehabilitation Act case where a government employee had his DOE security clearance revoked for a disability. Sanchez, 870 F.3d at 1195. That Circuit held that although DOE's decision to revoke the employee's security clearance was unreviewable per Egan, the later decisions "not to engage with him when he requested a [no-clearance] job or to reassign him to a [no-clearance] job," which it was obligated to do under the Act, were reviewable. Id. at 1195–96. This is because that court found that review of that later conduct did not require it to examine DOE's security-clearance decision. Id. at 1196. Likewise, this Court concludes here that it may review whether Centerra's post-revocation conduct passed statutory muster.

In sum, Egan poses no bar when a claim is "merely connected to the government's security clearance decision"; otherwise, it would "essentially immunize government contractors

12

from any liability in cases involving employees whose security clearances are revoked or denied." Zeinali, 636 F.3d at 550.  Plaintiffs thus may proceed against Centerra.

## IV.  Conclusion

The Court, accordingly, will grant the Government's Motion to Dismiss in part and deny it in part.  It will deny Centerra's Motion to Dismiss in full.  An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: February 25, 2026

13